# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

SHREE SWAMINARYAN LLC,

          Plaintiff,

v.                                    CIVIL ACTION NO.   2:25-cv-00628

ERIE INSURANCE COMPANY,

          Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Erie Insurance Property & Casualty Company's Motion to Dismiss* (Document 5), *Defendant Erie Insurance Property & Casualty Company's Memorandum of Law in Support of Its Motion to Dismiss* (Document 6), the *Plaintiff's Response to Defendant's Motion to Dismiss* (Document 7), and the *Reply in Support of Defendant Erie Insurance Property & Casualty Company's Motion to Dismiss* (Document 9), as well as the *Complaint* (Document 1-1).   For the reasons stated herein, the Court finds that the motion to dismiss should be denied in part and granted in part.

## FACTUAL ALLEGATIONS

The Plaintiff, Shree Swaminaryan LLC d/b/a Comfort Inn Parkersburg (now known as Quality Inn Parkersburg, Vienna, West Virginia), initiated this action in the Circuit Court of Wood County, West Virginia, on June 20, 2025.   The Plaintiff named as the Defendant, Erie Insurance Company, who removed the matter to federal court on October 23, 2025.

On or about January 4, 2014, the Plaintiff's motel sustained damage from snow and ice. The physical damage sustained to the motel was repaired and the expenses related to that loss were resolved.    Additionally, the Plaintiff's motel incurred lost revenue beginning January 4, 2014, and the "Plaintiff asserts that [the] lost revenue occurred through June 7, 2014," while the "Defendant contends that the loss extended only through April 20, 2014."    (Pl.'s Compl. ¶ 7.)   During the loss period, room availability at the Plaintiff's motel was limited due to a sprinkler system malfunction.    Several client groups, including Go Frac via Creative Lodging Solutions, Oil Field Lodging, and Halliburton Energy Services, attempted but were unable to book rooms during that time.   As a result, the Plaintiff calculated its lost revenue to be $247,087, while the "Defendant, through Matson Driscoll & Damico LLP ("MDD") forensic accounts, calculated the lost revenue during the loss period to be $50,604."    (*Id.* at ¶ 10, citing Document 1-1 at 10.)   The Plaintiff's motel was covered by an Erie Insurance Business Interruption Catastrophe liability policy and an Erie Insurance Ultraflex policy at the time of the loss.    The Plaintiff and the Defendant exchanged letters through June 22, 2015, in which they disagreed as it relates to the appropriate lost revenue amount.

By letter dated May 16, 2025, the Plaintiff submitted its demand for an appraisal of the loss revenue under the policy with the Defendant.   The policy provides:

> In case you or we shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraiser shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then on request of you or us, such umpire shall be selected by a judge of a court of record in the state in which the property is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences,

2

> only to the umpire. An award in writing, so itemized, of any two
> when filed with us shall determine the amount of actual cash value
> and loss. Each appraiser shall be paid by the party selecting him and
> the expense of appraisal and umpire shall be paid by the parties
> equally.

(*Id.* at ¶ 14.)   The Defendant responded by letter dated May 23, 2025, stating that "[w]e have reviewed your letter and reject your request for appraisal.   Our investigation has been completed a[n]d all payments owed have been issued. This claim remains closed."   (*Id.* at ¶ 15, quoting Document 1-1 at 21.)   On May 27, 2025, the Plaintiff sent a letter to the Defendant requesting that it "provide documents demonstrating that this claim has been resolved and closed, including correspondence, cancelled checks for the payment of the claim," and copies of a specific policy section that permits claims to "be unilaterally decided and closed without a resolution."   (*Id.* at ¶ 16, citing Document 1-1 at 24.)   The Plaintiff received no response from the Defendant and has not been paid the amount it claimed for lost revenue.

The Complaint contains the following counts: Count I – Breach of Contract & Breach of Implied Covenant of Good Faith and Fair Dealing and Count II – Unfair Claims Settlement Practices.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678

(quoting *Twombly,* 550 U.S. at 570).    In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'"    *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).    A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."    *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).    "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."    *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendant moved to dismiss the Plaintiff's claims, arguing that both claims are time-barred under the applicable statute of limitations.    The Defendant contends that the Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims are subject to a ten-year statute of limitations.    It argues that these claims accrued, and the statute of limitations began to run on December 4, 2014, which is when the Plaintiff was aware of the Defendant's calculations and that its loss period differed from Plaintiff's loss period for calculating lost revenue.    The Defendant further argues that the Plaintiff did not attempt to contact the Defendant until May 16, 2025, and that the Plaintiff was aware of its alleged contractual right to request an appraisal but chose to wait a decade before asserting it.    The Defendant also contends that the Plaintiff's West Virginia Unfair Trade Practices Act ("WVUTPA") claim is subject to a one-year statute of limitations.    It argues that the Plaintiff's WVUTPA claim accrued, and the statute of limitations began to run no later than June 22, 2015, when the Plaintiff was aware that there was a disagreement over the lost revenue and that its claim with the Defendant had

concluded.    The Defendant further argues that, based on the Plaintiff's attachment of and citations to the Defendant's calculations in its complaint, it did not conceal any facts that would prevent the Plaintiff from discovering its claims.

The Plaintiff agrees that the applicable statute of limitations for its breach of contract claim is ten years but argues that it filed its complaint within the ten-year period.    Specifically, the Plaintiff argues that its breach of contract claim accrued, and the statute of limitations began to run on May 23, 2025, because that is the date the breach occurred.    The Plaintiff further argues it requested its right and filed its complaint less than ten years after being informed in a letter dated June 22, 2015, that payments were going to be based on the Defendant's calculations.    The Plaintiff also contends that December 4, 2014, could not be the date that the statute of limitations began because the "Plaintiff could not know at that time that the Defendant would refuse to honor the terms of its policy."    (Pl.'s Resp. at 5.)    As it pertains to the Plaintiff's WVUTPA claim, the Plaintiff contends that the statute of limitations begins to run when it knew or reasonably should have known that the Defendant refused to defend it in an action.

As an initial matter, the Plaintiff has attached various documents as exhibits to its complaint, as well as a letter, not included among those documents, to its response to the Defendant's motion to dismiss.    A court can "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits."    *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citations omitted).    Thus, the Court can consider the documents attached to the Plaintiff's complaint.    Moreover, because the document attached to the Plaintiff's response is explicitly referenced in the Plaintiff's complaint, it can be considered as well.

6

The West Virginia Supreme Court has established a five-step process for addressing a statute of limitations defense:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255, 258 (W. Va. 2009).

Beginning with the Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing ("good faith") claims, the Court finds that these claims are not time-barred. Regarding the applicable statute of limitations, the Plaintiff's breach of contract claim is governed by West Virginia's 10-year statute of limitations for written contracts. W. Va. Code § 55-2-6. Likewise, because the Plaintiff's breach of the implied covenant of good faith and fair dealing claim cannot survive without its breach of contract claim, it too is governed by the 10-year statute of limitations. *See Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007) (providing that "an implied covenant of good faith and fair dealing does not provide a cause

7

of action apart from a breach of contract claim").    "[T]he statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known." *McKenzie v. Cherry River Coal & Coke Co.*, 466 S.E.2d 810, 817 (W. Va. 1995).

The Plaintiff alleges that the Defendant breached their insurance policy contract by refusing to engage in the appraisal process to resolve their differences related to the applicable period for calculating lost revenue.   The Plaintiff argues that May 23, 2025, is the date in which its breach of contract and good faith claims accrued because that is the date when the Defendant refused to engage in the appraisal process.   The Defendant argues that the Plaintiff knew or reasonably should have known that the contract was breached by December 4, 2014, since that is when the Plaintiff was aware of the Defendant's calculation for the loss period and that it differed from the Plaintiff's.

Based on the complaint, as well as the attached exhibits, it appears that the Plaintiff's breach of contract and good faith claims accrued upon receipt of Defendant's June 22, 2015 letter. The Plaintiff reasonably was on notice of this alleged breach when it received a letter from the Defendant stating that "[a]t this time. . . Erie is not going to change, alter, or amend the payments" and that "[a]ll payments to date conclude your claim."   (Document 7-1.)   The Plaintiff was aware at that time that the Defendant would not be willing to engage in the appraisal process or make further payments.   Thus, on the face of the complaint, it appears that the Plaintiff's claims accrued, and the statute of limitations began at the earliest date of June 22, 2015 (if the letter was received on that same date), which is within ten years of the filing of the complaint on June 20, 2025.

Although the Defendant asserts that the Plaintiff's claims accrued on December 4, 2014, the date the Plaintiff was aware of the Defendant's calculations, the Plaintiff's breach of contract

claim is not based on the Defendant's calculation of the loss period.   Rather, its breach of contract claim is based on the Defendant's refusal to engage in the appraisal process set forth in the policy. The fact that the Plaintiff may have been aware of the Defendant's calculations by December 4, 2014, has no bearing on the statute of limitations analysis regarding the breach of contract and good faith claims because, as previously discussed, the Plaintiff was not made aware that the Defendant would refuse to engage in the appraisal process until it received the Defendant's June 22, 2015 letter concluding the claim.   Accordingly, because the facts alleged by the Plaintiff demonstrate that the statute of limitations began to run, at the earliest, on June 22, 2015, it does not appear, on the face of the complaint, that its breach of contract and good faith claims are time-barred.[1]

Turning to the Plaintiff's WVUTPA claim, the Court finds that this claim is time-barred. Beginning with the applicable statute of limitations, the Plaintiff's WVUTPA claim is "governed by the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c)."   Syl. Pt. 1, *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608 (W. Va. 1998).

Next, regarding the requisite elements, in order to establish a WVUTPA claim, "a claimant must demonstrate that the insurer (1) violated the WVUTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the WVUTPA with such frequency as to indicate a general business practice."   *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005).   The Plaintiff's WVUTPA claim includes violations of § 33-11-4(9)(b), (c), (d), (f), and (n), and relates to alleged unfair settlement practices committed by the Defendant arising out of the January 4, 2014 water sprinkler incident at the Plaintiff's motel.   Specifically, the

---

[1] Having determined that the Plaintiff's breach of contract and good faith claims fall within the 10-year statute of limitations, the Court need not address the subsequent steps under *Dunn*.

9

Plaintiff's WVUTPA claim stems from the Defendant's refusal to make payment of lost revenue during the Plaintiff's alleged loss period.   It is clear from the complaint, as well as the documents referenced in and attached to the complaint, that the Plaintiff's WVUTPA claim, like its breach of contract and good faith claims, accrued, at the earliest, on June 22, 2015.   Specifically, the Defendant's calculations, which did not provide for full payment of the Plaintiff's alleged lost revenue, were completed on December 4, 2014. The Defendant later notified the Plaintiff by letter dated June 22, 2015, that it would not adjust its payments and that "[a]ll payments to date conclude your claim."   (Document 7-1;) (Pl.'s Compl. at ¶ 10, 12, citing Document 1-1 at 10, Document 7-1.)   So, the Plaintiff's WVUTPA claim accrued once it received notice via Defendant's letter dated June 22, 2015, that the claim had concluded.[2]

Moving to the discovery rule, the statute of limitations will be tolled "until a claimant knows or by reasonable diligence should know of his claim."   *Dunn*, 689 S.E.2d at 262 (quoting Gaither v. City Hosp., Inc., 487 S.E.2d 901, 906 (W. Va. 1997)).   The West Virginia Supreme Court has directed courts to consider the following when applying the discovery rule:

> [U]nder the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

*Id.*   "A plaintiff who knows of facts that place him or her on notice of a possible duty of care breach 'has an affirmative duty to further and fully investigate the facts surrounding that potential

---

[2] Although it appears that some of the Plaintiff's allegations, specifically pertaining to § 33-11-4(9)(b) and (n), did not occur until it requested further information in May 2025, the Court need not address whether the statute of limitations on these WVUTPA claims began to run in May 2025 because the Court finds that it actually began to run, as discussed in more detail below, once the Plaintiff received the Defendant's June 22, 2015 letter and was fully aware that its claim had concluded and the Defendant would make no further payments..

breach.'"  *Wilt v. Household Life Ins. Co.*, No. 2:14-cv-31400, 2016 WL 5844485, at \*8 (S.D. W. Va. Sept. 30, 2016) (quoting *McCoy v. Miller*, 578 S.E.2d 355, 359 (W. Va. 2003)).

The Plaintiff was aware that its claim had concluded, from the Defendant's perspective, and that the Defendant would not provide the Plaintiff's full lost revenue amount, when it received the Defendant's letter dated June 22, 2015.  The Plaintiff explicitly references the Defendant's June 22, 2015 letter in its complaint, stating that it and the Defendant "disagreed as to the appropriate amount of lost revenue," and, again, that letter stated that the Plaintiff's claim had concluded.  (Pl.'s Compl. at ¶ 12.)  Therefore, the Plaintiff was put on notice that the Defendant may have violated the WVUTPA at that time.  Rather than conduct an investigation into the dispute to determine if there was a potential violation, the Plaintiff, instead, waited almost ten years before engaging again with the Defendant about its claim.  Because the Plaintiff knew, upon receipt of the June 22, 2015 letter, that its claim had concluded without receiving the appropriate amount for lost revenue, and failed to conduct further investigation, the Plaintiff is not entitled to the benefit of the discovery rule.

Turning to the concealment of facts, because the complaint reveals that the Plaintiff had access to the Defendant's calculations and received the Defendant's letter dated June 22, 2015, there is no indication that the Defendant concealed facts that would prohibit the Plaintiff from discovering its WVUTPA claim.  Lastly, there is no indication that some other tolling doctrine applies.  Therefore, because it is apparent from the face of the complaint that the statute of limitations began to run on June 22, 2015, and the Plaintiff did not file until June 20, 2025, well past the one-year statute of limitations period, its WVUTPA claim is time-barred.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Erie Insurance Property & Casualty Company's Motion to Dismiss* (Document 5) be **DENIED** as to the Plaintiff's breach of contract and good faith and fair dealing claims and **GRANTED** as to the Plaintiff's West Virginia Unfair Trade Practices Act claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    January 23, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

12